USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/06/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LUSAIDA COLLADO,                                        :
                                                        :
                    Plaintiff,                          :        **OPINION &**
                                                        :        **ORDER**
                                                        :
          -against-                                     :           20-CV-11112 (JLC)
                                                        :
KILOLO KIJAKAZI,[1]                                     :
Acting Commissioner,                                    :
Social Security Administration,                         :
                                                        :
                    Defendant.                          :
                                                        :
------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

　　Plaintiff Lusaida Collado seeks judicial review of a final determination by

defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security

Administration, denying her application for disability insurance benefits and

supplemental security income under the Social Security Act.  The parties have

cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal

Rules of Civil Procedure.  For the reasons set forth below, Collado's motion is

denied, and the Commissioner's cross-motion is granted.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of the Social Security
Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this action.

# I.  BACKGROUND

## A.  Procedural History

On July 12, 2018, Lusaida Collado ("Collado") filed a Title II application for Social Security Disability Insurance Benefits ("SSDI"), and a Title XVI application for Supplemental Social Security Income ("SSI"), alleging disability beginning May 1, 2014.  Administrative Record, filed June 1, 2021 ("AR"), Dkt. No. 12 at 21.[2]  The Social Security Administration ("SSA") denied Collado's application on October 2, 2018.  *Id.*  Collado then requested a hearing before an administrative law judge ("ALJ") on October 25, 2018.  *Id.*  A video hearing was held on November 22, 2019.  *Id.*  In a 17-page written decision dated February 24, 2020, the ALJ found that Collado was not disabled and denied her claim.  *See* AR at 21–37.  Collado requested a review by the Appeals Council, which was denied on November 5, 2020.  *Id.* at 1.

On December 31, 2020, Collado filed this action seeking review of the ALJ's decision.  *See* Complaint, filed December 31, 2020, Dkt. No. 1.  On November 30, 2021, Collado moved for judgment on the pleadings and submitted a memorandum of law in support of her motion.  Notice of Motion, Dkt. No. 18; Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mem."), Dkt. No. 19.  The Commissioner cross-moved for judgment on the pleadings on January 31, 2022 and submitted a memorandum in support of her motion.  Notice of Cross-Motion, Dkt. No. 21; Memorandum of Law in Support of the Commissioner's Cross-

---

[2] The page numbers refer to the sequential numbering of the Administrative Record provided on the bottom right corner of the page, not the numbers produced by the Electronic Case Filing ("ECF") System.

Motion for Judgment on the Pleadings and in Response to Plaintiff's Motion ("Def. Mem."), Dkt. No. 22.  On February 22, 2022, Collado submitted reply papers.  Reply Memorandum of Law in Support of Plaintiff's motion for Judgment on the Pleadings ("Pl. Reply"), Dkt. No. 23.

### B. The Hearing Before the ALJ

The hearing was held in Jersey City, New Jersey, before ALJ David Suna on November 22, 2019.  AR at 45.  Collado appeared via video teleconference from the Bronx, and was represented by her attorney, Erica Bullo.  *Id.*  Collado's sister, Maria Collado, and interpreter Elmo Padilla, were also present from the Bronx, and Vocational Expert ("VE") Dawn Blythe participated by telephone.  *Id.*

At the time of the hearing, Collado was 53 years old and lived in the Bronx with one of her three children – her son, aged 28.  *Id.* at 51.  She testified that she came to the United States from the Dominican Republic in 1992 and became a United States citizen in July 2018.  *Id.* at 51-52.  Collado testified that she was not given the citizenship exam because of her memory issues; she was asked personal questions instead.  *Id.* at 52.  Collado understands very basic English but cannot speak the language.  *Id.* at 53.  Her highest level of education is the 7th grade.  *Id.*

Collado testified that her last job was as a babysitter, but she could not recall when she last worked.  *Id.* at 55.  When examined by her attorney, Collado testified that she needs assistance from her son or sister with daily tasks such as laundry, grocery shopping, cleaning, and cooking.  *Id.*  She testified that she does not go out alone due to her depression and anxiety, which often make her paranoid and afraid to go out alone.  *Id.* at 56.

Maria Collado testified that she helps her sister with activities such as cleaning and cooking, especially because she is afraid her sister is going to forget something, such as leaving food on the stove. *Id.* at 59. Maria Collado testified that she is with her sister all the time and believes that her sister is unable to live alone. *Id.* at 59–61.

After Maria Collado's testimony, the ALJ also questioned the VE. Specifically, the ALJ inquired about the employability of an individual with Collado's vocational profile who was limited to light to medium work except that she could (1) do no more than frequently reach with the upper right extremity; (2) tolerate no more than loud noise; (3) have no exposure to unprotected heights or dangerous machinery or operating a motor vehicle; (4) be limited to simple, routine tasks that are not at a production-rate pace, such as assembly line work; (5) have no more than frequent interaction with the general public; (6) tolerate no more than occasional changes in the work setting; and (7) communicate no more than simple information in English. *Id.* at 63. The VE testified that such a person could not perform Collado's past relevant work but could perform the occupations of coffee maker, store laborer, or hospital cleaner. *Id.* at 64. The ALJ then asked the VE what jobs would be available if he further limited the individual to "light work" and the VE testified that the individual could perform the jobs of housekeeping cleaner, cafeteria attendant, or photocopying machine operator. *Id.* at 65. Further, the VE testified that all six of the occupations she listed could be carried out even if tasks had to be demonstrated rather than explained in writing. *Id.* Finally, the VE

testified that in her experience, an individual could be off-task for no more than 10% of the time and could have no more than one day of missed work per month. *Id.* at 66.

### C. The Medical Evidence

In her motion papers, Collado has provided a summary of the medical evidence contained in the administrative record. *See* Pl. Mem. at 3–12. In response, the Commissioner has adopted Collado's recitation of the relevant facts and underlying proceedings. *See* Def. Mem. at 5. She has also submitted additional or contrary facts in the briefing of this motion to which Collado does not object. *Id.* at 5–6. Having examined the record, the Court adopts the parties' summaries as accurate and complete for purposes of the issues raised in this action. The Court will discuss the medical evidence pertinent to the adjudication of this case in Section II. B below. *See, e.g., Platt v. Comm'r*, No. 20-CV-8382 (GWG), 2022 WL 621974, at *2 (S.D.N.Y. Mar. 3, 2022) (adopting parties' summaries of medical evidence).

### D. The ALJ's Decision

The ALJ denied Collado's application on February 24, 2020. AR at 21. In doing so, the ALJ concluded that Collado was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act from May 1, 2014 through February 24, 2020, the date of the decision. *Id.* at 22.

Following the five-step test set forth in the SSA regulations, the ALJ found that Collado met the insured status requirements through December 31, 2017 and

"has not engaged in substantial gainful activity since May 1, 2014, the alleged onset date." *Id.* at 24.  At step two, the ALJ found that Collado had "the following severe impairments: depressive disorder, anxiety disorder, post-traumatic stress disorder, right shoulder impairment, hypertension, and obesity." *Id.* at 24.

At step three, the ALJ found that Collado "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." *Id.* at 25.

Before moving to step four, the ALJ assessed Collado's residual functional capacity ("RFC").  *See id.* at 25–35.  In doing so, the ALJ determined that Collado's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and the other evidence in the record." *Id.* at 28.  The ALJ concluded that Collado had the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant could do no more than frequent reaching with the dominant upper right extremity; tolerate no more than loud noise; and have no exposure to unprotected heights, dangerous machinery, or operation of a motor vehicle.  She is also limited to simple, routine tasks that are not at a production rate (e.g., assembly line work); no more than frequent interaction with supervisors or coworkers; no more than occasional interaction with the general public; tolerate no more than occasional changes in the work setting; can communicate no more than simple information in English; and new tasks must be demonstrated instead of in writing.

*Id.* at 27-28.  In coming to this decision, the ALJ concluded the following:  Collado has a moderate limitation in understanding, remembering, or applying information;

6

she has a moderate limitation with regard to interaction with others; a moderate limitation with regard to the ability to concentrate, persist, or maintain pace, and finally, a moderate limitation with regard to adapting or managing herself. *Id.* at 25-27. The ALJ provided a detailed report of Collado's medical records, spanning 2014 through 2018. *Id.* at 29-32. Finally, the ALJ also provided an analysis of which physicians he found persuasive, which he found to be unpersuasive, and why. *Id.* at 33-34.

At step four, the ALJ concluded that Collado was "unable to perform any past relevant work." *Id.* at 35. Finally, at step five, considering Collado's "age, education, work experience, and residual functional capacity," the ALJ concluded that there are "jobs that exist in significant numbers in the national economy" that Collado could perform—specifically, the jobs of coffee maker, laborer/stores, and cleaner hospital. *Id.* at 36. Accordingly, the ALJ determined that "a finding of 'not disabled' [was] appropriate." *Id.*

## II. DISCUSSION

### A. Legal Standards

#### 1. Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). The district court must determine whether the Commissioner's final decision applied the correct legal standards and whether the decision is supported by "substantial evidence." *Butts v. Barnhart*, 388

F.3d 377, 384 (2d Cir. 2004).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and alterations omitted); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))).

The substantial evidence standard is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted).  "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting

inferences can be drawn." *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).  On the basis of this review, the court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding . . . for a rehearing." 42 U.S.C. § 405(g).  However, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard, [the court has], on numerous occasions, remanded to the [Commissioner] for further development of the evidence." *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)) (alteration in original).

### 2. Commissioner's Determination of Disability

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also Colgan v. Kijakazi*, 22 F.4th 353, 357  (2d Cir.  2022).  Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  "'[T]he ALJ should consider not only whether Plaintiff was disabled at the time of the hearing, but also whether

Plaintiff was entitled to disability benefits for any closed, continuous period . . . following the date of his claim.'" *Love v. Kijakazi*, No. 20-CV-1250 (EK), 2021 WL 5866490, at *5 (E.D.N.Y. Dec. 10, 2021) (quoting *Williams v. Colvin*, No. 15-CV-144 (WMS), 2016 WL 3085426, at *4 (W.D.N.Y. June 2, 2016); *see also Milliken v. Saul*, No. 19-CV-9371 (PED), 2021 WL 1030606, at *9 (S.D.N.Y. Mar. 17, 2021) ("A 'closed period' of disability occurs where a claimant is found by the Commissioner to be disabled for a finite period of time which began and ended prior to the date of the agency's administrative determination of disability.").

In assessing a claimant's impairments and determining whether they meet the statutory definition of disability, the Commissioner "must make a thorough inquiry into the claimant's condition and must be mindful that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'" *Mongeur*, 722 F.2d at 1037 (quoting *Gold v. Sec'y of H.E.W.*, 463 F.2d 38, 41 (2d Cir. 1972)). Specifically, the Commissioner's decision must consider factors such as: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Id*. (citations omitted).

### a. Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation process' to determine whether a claimant is disabled[.]" *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. §

404.1520(a)(4).  First, the Commissioner must establish whether the claimant is presently employed.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is unemployed, the Commissioner goes to the second step and determines whether the claimant has a "severe" impairment restricting his or her ability to work.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant has such an impairment, the Commissioner moves to the third step and considers whether the medical severity of the impairment "meets or equals" a listing in Appendix One of Subpart P of the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is considered disabled.  *Id.*; 20 C.F.R. § 404.1520(d).

If the claimant alleges a mental impairment, the Commissioner must apply a "special technique" to determine the severity of the claimant's impairment at step two, and to determine whether the impairment satisfies Social Security regulations at step three.  *See* 20 C.F.R §§ 404.1520a, 416.920a; *see also Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  "If the claimant is found to have a 'medically determinable mental impairment,' the [Commissioner] must 'specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s),' then 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of [Sections 404.1520a, 416.920a],' which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation."  *Velasquez v. Kijakazi*, No. 19-CV-9303 (DF), 2021 WL 4392986, at *18 (S.D.N.Y. Sept. 24, 2021) (quoting 20 C.F.R. §§ 404.1520a(b), (c)(3); *id.* §§ 416.920a(b), (c)(3)).  "The

functional limitations for these first three areas are rated on a five-point scale of none, mild, moderate, marked, or extreme, and the limitation in the fourth area (episodes of decompensation) is rated on a four-point scaled of none, one or two, three, or four or more." *Id.* (cleaned up).  If the claimant's impairment does not meet or equal a listed impairment, then the Commissioner continues to the fourth step and determines whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv). Finally, if the claimant does not have the RFC to perform past relevant work, the Commissioner completes the fifth step and ascertains whether the claimant possesses the ability to perform any other work.  20 C.F.R. § 404.1520(a)(4)(v).

The claimant has the burden at the first four steps.  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  If the claimant is successful, the burden shifts to the Commissioner at the fifth and final step, where the Commissioner must establish that the claimant has the ability to perform some work in the national economy. *See, e.g., Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

### b.  Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial."  *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000).  Consequently, "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted).  As part of this duty, the ALJ must "investigate the facts and

develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at 111. Specifically, under the applicable regulations, the ALJ is required to develop a claimant's complete medical history. *Pratts*, 94 F.3d at 37 (citing 20 C.F.R. §§ 404.1512(d)–(f)). This responsibility "encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Pena v. Astrue*, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008) (citations omitted).

Whether the ALJ has satisfied this duty to develop the record is a threshold question. Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record." *Scott v. Astrue*, No. 09-CV-3999 (KAM) (RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Rodriguez ex rel. Silverio v. Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law.") (citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999)). The ALJ must develop the record even where the claimant has legal counsel. *See, e.g., Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Remand is appropriate where this duty is not discharged. *See, e.g., Moran*, 569 F.3d at 114–15 ("We vacate not because the ALJ's decision was not

supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

### c.  Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at \*14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)) (internal quotation marks omitted).  For SSI and SSDI applications filed prior to March 27, 2017, SSA regulations set forth the "treating physician rule," which required an ALJ to give more weight to the opinions of physicians with the most significant clinical relationship with the plaintiff.  20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2); *see also, e.g., Taylor v. Barnhart*, 117 F. App'x 139, 140 (2d Cir. 2004).  Under the treating physician rule, an ALJ was required to give "good reasons," 20 C.F.R. § 404.1527(c)(2), if she determined that a treating physician's opinion was not entitled to "controlling weight," or at least "more weight," than the opinions of non-treating and non-examining sources.  *Gonzalez v. Apfel*, 113 F. Supp. 2d 580, 588 (S.D.N.Y. 2000).  In addition, a consultative physician's opinion was generally entitled to "little weight."  *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009).

However, in January 2017, the SSA revised its regulations regarding the evaluation of medical opinion for claims filed on or after March 27, 2017 (such as Collado's claim in this case).  *See* REVISIONS TO THE RULES REGARDING THE EVALUATION OF MEDICAL EVIDENCE, 82 Fed. Reg. 5844, 5869–70 (Jan. 18, 2017).  "In

implementing new regulations, the SSA has apparently sought to move away from a perceived hierarchy of medical sources." *Velasquez*, 2021 WL 4392986, at \*19 (citing 82 Fed. Reg. 5844). The new regulations state that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* (quoting 20 C.F.R. §§ 404.1520c(a), 416.1520c(a)). "Instead, an ALJ is to consider all medical opinions in the record and 'evaluate their persuasiveness' based on the following five 'factors': (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any 'other' factor that 'tend[s] to support or contradict a medical opinion.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(a)–(c), 416 920c(a)–(c)).

Notwithstanding the requirement to "consider" all of these factors, the ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)–(b), 416 920c(a)–(b). Under the new regulations, the ALJ must "explain how [he] considered" both the supportability and consistency factors, as they are "the most important factors." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2); *see also, e.g., Amber H. v. Saul*, No. 20-CV-490 (ATB), 2021 WL 2076219, at \*4 (N.D.N.Y. May 24, 2021) (two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed foundation of treating physician rule). With respect to the supportability factor, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase."

*Vellone v. Saul*, No. 20-CV-261 (RA) (KHP), 2021 WL 319354, at \*6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404 1520c(c)(1), 416.920c(c)(1)), *adopted sub nom. Vellone on behalf of Vellone v. Saul*, 2021 WL 2891138 (July 6, 2021). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)); *see generally* 42 U.S.C. § 423(d)(5)(B) (requiring ALJ to base decision on "all the evidence available in the [record]").

In addition, under the new regulations, the ALJ is required to consider, but need not explicitly discuss, the three remaining factors (relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion). *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Where, however, the ALJ has found two or more medical opinions to be equally supported and consistent with the record, but not exactly the same, the ALJ must articulate how [she] considered those three remaining factors." *Velasquez*, 2021 WL 4392986, at \*20 (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)).

Courts considering the application of the new regulations have concluded that "the factors are very similar to the analysis under the old [treating physician] rule." *Id.* (quoting *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)); *see also Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502 (AJN) (KHP), 2021 WL 363682, at \*9 (S.D.N.Y. Jan. 29, 2021) (collecting cases considering new regulations and concluding that "the essence" of the treating physician rule "remains the same, and the factors to be considered in weighing the various medical opinions in a given

16

claimant's medical history are substantially similar"), adopted by 2022 WL 717612 (Mar. 10, 2022). "This is not surprising considering that, under the old rule, an ALJ had to determine whether a treating physician's opinion was *supported* by well-accepted medical evidence and *not inconsistent* with the rest of the record before controlling weight could be assigned." *Acosta Cuevas*, 2021 WL 363682, at *9; *see also e.g., Andrew G. v. Comm'r of Soc. Sec.*, No. 19-CV-942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) ("consistency and supportability" were foundation of treating physician rule); *Brianne S. v. Comm'r of Soc. Sec.*, No. 19-CV-1718 (FPG), 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (remanding to ALJ with instructions to provide discussion of supportability and consistency of two medical opinions and explaining that ALJ may not merely state that examining physician's opinion is inconsistent with overall medical evidence).

Importantly, "an ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler*, 546 F.3d at 265). However, the Court need not remand the case if the ALJ only committed harmless error, *i.e.*, where the "application of the correct legal principles to the record could lead only to the same conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration omitted) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### d. Claimant's Credibility

An ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court. *Osorio v. Barnhart*, No. 04-CV-7515 (DLC), 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006). "[A]s with any finding of fact, '[i]f the Secretary's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints." *Id.* (quoting *Aponte v. Sec'y of Health and Hum. Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Still, an ALJ's finding of credibility "must . . . be set forth with sufficient specificity to permit intelligible plenary review the record." *Pena*, 2008 WL 5111317, at *10 (internal quotation marks omitted) (quoting *Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988)). "The ALJ must make this [credibility] determination 'in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms.'" *Id.* (quoting *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984)).

SSA regulations provide that statements of subjective pain and other symptoms alone cannot establish a disability. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(a)). The ALJ must follow a two-step framework for evaluating allegations of pain and other limitations. *Id.* First, the ALJ considers whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce" the symptoms alleged. *Id.* (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the

claimant's] symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence' of record." *Id.* (citing 20 C.F.R. § 404.1529(a)).

Among the kinds of evidence that the ALJ must consider (in addition to objective

medical evidence) are:

> 1. The individual's daily activities; 2. [t]he location,
> duration, frequency, and intensity of the individual's pain
> or other symptoms; 3. [f]actors that precipitate and
> aggravate the symptoms; 4. [t]he type, dosage,
> effectiveness, and side effects of any medication the
> individual takes or has taken to alleviate pain or other
> symptoms; 5. [t]reatment, other than medication, the
> individual receives or has received for relief of pain or
> other symptoms; 6. [a]ny measures other than treatment
> the individual uses or has used to relieve pain or other
> symptoms (e.g., lying flat on his back, standing for 15 to
> 20 minutes every hour, or sleeping on a board); and 7.
> [a]ny other factors concerning the individual's functional
> limitations and restrictions due to pain or other
> symptoms.

*Pena*, 2008 WL 5111317, at *11 (citing Social Security Ruling ("SSR") 96-7p, 1996

WL 374186, at *3 (SSA July 2, 1996)).

**B. Analysis**

Collado raises several objections to the ALJ's decision: (1) the ALJ failed to

properly consider the opinion of Collado's treating psychiatrist; (2) the ALJ failed to

consider the number of Collado's monthly absences she will have as a result of her

impairments; (3) the ALJ did not properly consider the Paragraph "B" Criteria of

Listings 12.03, 12.04, 12.06 and 12.15; and (4) the ALJ failed to properly evaluate

Collado's subjective statements.  Pl. Mem. at 13–25.

The Commissioner responds that the ALJ's decision should be affirmed because (1) the ALJ's RFC determination is supported by substantial evidence; (2) the ALJ properly evaluated the opinion and prior administrative medical findings; (3) the ALJ properly evaluated Collado's subjective allegations; and (4) the ALJ was not required to include additional restrictions to Collado's RFC.  Def. Mem. at 11–25.

For the reasons which follow, the Court concludes that (1) the ALJ properly evaluated the medical opinions and prior administrative medical findings; (2) the ALJ's failure to address potential monthly absences was harmless error; (3) the ALJ's RFC determination is supported by substantial evidence; and (4) the ALJ properly evaluated Collado's subjective allegations.[3]

### 1. The ALJ Properly Evaluated the Medical Opinions and Prior Administrative Medical Findings

Contrary to Collado's argument, the ALJ correctly weighed the opinions of the medical professionals.  Collado filed her claim in 2018, so the Treating-Physician Rule does not apply.  As Collado correctly observes, the new regulations apply to her claim.  Pl. Mem. 14–15.  The new regulations state that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those

---

[3] Collado does not challenge the ALJ's RFC finding with respect to her physical limitations.  As a result, the Commissioner's response also did not address her physical limitations.  Because Collado is represented by counsel and only challenges the Commissioner's determination regarding the ALJ's mental limitations findings (made in the course of determining Collado's RFC), the Court will focus solely on the ALJ's mental limitation findings.  *See, e.g., Prince v. Colvin*, No. 13-CV-7666 (TPG), 2015 WL 1408411, at *15 (S.D.N.Y. Mar. 27, 2015).

from [a claimant's] medical sources." *Velasquez*, 2021 WL 4392986, at *19 (quoting

20 C.F.R. §§ 404.1520c(a), 416.1520c(a)). "Instead, an ALJ is to consider all medical

opinions in the record and 'evaluate their persuasiveness' based on the following

five 'factors': (1) supportability, (2) consistency, (3) relationship with the claimant,

(4) specialization, and (5) any 'other' factor that 'tend[s] to support or contradict a

medical opinion,'" with supportability and consistency being the two most important

factors. *Id.* (quoting 20 C.F.R. §§ 404.1520c(a)–(c), 416 920c(a)–(c)). Here, the ALJ

appropriately followed the new regulations when considering each of the medical

professionals' views in question, determining which opinions he found to be

persuasive and which he did not based on the evidence, as laid out below. *See*

*Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) *(*ALJ's analysis satisfied

applicable regulations when the ALJ "deemed aspects of the treating physicians'

opinions critically flawed and found that the opinions were inconsistent with other

substantial evidence").

### a. Dr. Lorena Grullon-Figueroa and Dr. Toula Georgiou

The ALJ found the opinions and reports of Dr. Lorena Grullon-Figueroa,

Collado's treating psychiatrist, and Dr. Toula Georgiou, who performed a

consultative psychiatric examination, not to be persuasive. The ALJ determined

that Dr. Grullon-Figueroa's findings were not consistent with the rest of the record

or the longitudinal treatment notes. AR at 34-35.[4] Specifically, the ALJ found Dr.

---

[4] The ALJ mistakenly referred to her as "Lenora Figueroa," and to Dr. Toula Georgiou as "Dr. Toula." AR 34.

Grullon-Figueroa's Medical Source Statement submitted in October 2018 to be
unpersuasive because it was not consistent with the clinical findings or any test
results. *Id.*, *referring to* AR at 864-67. For example, Dr. Grullon-Figueroa's report
checks the box for "poor memory"; however, in November 2018, a neurologist
examined Collado and found that she did not have memory issues, dementia, or
amnesia. *Id.* at 960. Because the doctors presented differing assessments, the ALJ
had the discretion to evaluate conflicting evidence and resolve them. In such
circumstances, courts "'defer to the Commissioner's resolution of conflicting
evidence,' *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citation
omitted), and accept the weight assigned to the inconsistent opinions as a proper
exercise of the ALJ's discretion." *Smith*, 740 F. App'x at 726.

Collado observes that Dr. Grullon-Figueroa checked the box for "Extreme
Loss" in "22 work related areas." Pl. Mem. at 16, *referring to* AR at 866–67. Check
box forms can constitute sufficient evidence when they are supported by other
medical evidence in the record. *See Colgan*, 22 F. 4th at 361-62. However, this is
not the case here. Dr. Grullon-Figueroa's check box form does not constitute
sufficient evidence because she did not provide any explanation or support for the
boxes she checked, nor is there support for them in the remainder of the medical
record. AR at 866-67. Accordingly, the ALJ did not err when he chose not to factor
them into his evaluation. *See Heaman v. Berryhill*, 765 F. App'x 498, 501 (2d Cir.
2019) (ALJ provided sufficient reasons for discounting treating physicians' opinions,
because opinions were checkbox forms without "clinical findings and diagnostic

22

results" and "were inconsistent with the moderate findings reflected in the doctors' notes").

Similarly, the ALJ explained that he found Dr. Georgiou's opinion to be unpersuasive because not only are her conclusions inconsistent with the rest of the medical record, they are inconsistent with her own examination notes: "For example, Dr. [Georgiou] indicate[d] a moderate impairment relative to the claimant's attention and concentration, however, [s]he goes on to note that [s]he was able to count in both directions[, and] conduct simple calculations including addition and subtraction." AR at 33–34, *referring to* AR at 525. Further, Dr. Georgiou concluded that Collado's cognitive functioning appears borderline, "but goes on to note that her general fund of knowledge is appropriate for her experience, with no other insight as to why [s]he concludes that she is likely within the borderline range." *Id.* at 525. *See, e.g., Bonilla Mojica v. Berryhill*, 397 F. Supp. 3d 513, 536 (S.D.N.Y. 2019) (ALJ properly accorded less weight to vague opinion of consultative examiner who "did not define what [s]he meant by 'significantly interfere'" with respect to claimant's psychiatric problems).

Additionally, the ALJ met his duty to develop the record with regard to Dr. Georgiou, contrary to Collado's contentions. Pl. Mem. at 18–19. Collado's medical record spanned several years, with treatment notes and opinions from multiple medical experts, and in such circumstances the ALJ was not obligated to follow-up with Dr. Georgiou for greater clarity. *See Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022) (because "there was a complete record before the ALJ consisting of

medical opinions, treatment notes, and test results from 2016 to 2018, as well as [claimant]'s own testimony," the ALJ was not under obligation to pursue more information from particular physician.)  Here, as in *Schillo*, the ALJ had a complete record.

### b. Dr. Bhutwala

Collado takes issue with the fact that the ALJ found Dr. Bhutwala's opinion to be persuasive, because Dr. Bhutwala did not examine her in person.  Pl. Mem. at 19.[5]  The fact that Dr. Bhutwala, the state agency psychological consultant, did not examine Collado in person, in and of itself, is not a reason for the ALJ to discount his opinion.  "[T]he opinions of nonexamining sources [can] override treating sources' opinions provided they are supported by evidence in the record."  *Diaz v. Shalala*, 59 F.3d 307, 313 n. 5 (2d Cir. 1995).  Dr. Bhutwala's findings on their own might not meet the substantial evidence standard, but those findings that are supported by years of clinical notes in the record, do.  AR at 78–80.  For example, Dr. Bhutwala commented that while the reports include "episodic" complaints of Collado having memory issues, he also observed that previous reports noted "no cognitive deficit" and that Collado was "not significantly limited" in her ability to carry out daily tasks or in her ability to maintain a schedule or regular attendance. *Id.*  These conclusions are supported by and, in fact, come from the clinical notes in Collado's medical records—from 2014 through 2018 she had episodes of depression and anxiety but, overall, she was stable and was able to manage any episodes of

---

[5] Dr. Bhutwala's first name does not appear in the record.

depression and anxiety with medication and therapy.  *See Id.* at 338-39, 365-66, 411, 417-18, 420-21, 424-25, 444-45, 448, 456, 459, 464, 472, 476, 492, 501, 510, 514, 517-19.  Further, although she started to complain of memory issues in 2017, by 2018 she denied experiencing forgetfulness.  *Id.* at 365, 338.  Thus, the clinical notes support Dr. Bhutwala's conclusions.

As Collado points out, the opinion of Dr. Bhutwala that the ALJ found to be persuasive was also based on the findings of Dr. Georgiou, whose opinion the ALJ found not to be persuasive.  Pl. Reply at 3–4.  While the ALJ might have included further discussion as to why Dr. Bhutwala's opinion was persuasive but Dr. Georgiou's was not, any error the ALJ committed by not doing so is harmless.  As the ALJ explained, he found Dr. Georgiou's opinion unpersuasive for two reasons: (1) because it was not specific enough, and (2) her conclusions were inconsistent with the results of her exam.  AR at 33–34.  As discussed above, Dr. Georgiou's examination findings were consistent with the rest of the medical record—Collado has an appropriate "general fund of knowledge," and can conduct simple arithmetic. *Id.* at 525.  Nevertheless, based on her observations, Dr. Georgiou concluded that Collado's cognitive functioning was "borderline."  *Id.*  Dr. Bhutwala based his conclusions on the <u>results</u> of the exam conducted by Dr. Georgiou and not on Dr. Georgiou's conclusions, which as discussed above, were not sufficiently explained. As such, the ALJ's decision to rely on Dr. Bhutwala's opinion was appropriate. Notably, while making this assessment, the ALJ added that he had "afforded the claimant more severe limitations to accommodate the entirety of the mental

symptomatology." AR at 33. *See, e.g., Anselm v. Comm'r of Soc. Sec.*, 737 F. App'x 552, 554–55 (2d Cir. 2018) (ALJ whose decision to deny benefits was based on assessment of state agency physician, and not two treating physicians, met substantial evidence standard).

### 2. The ALJ's Failure to Address the Potential Monthly Absences was Harmless Error

In his decision, the ALJ did not address potential absences from work that would affect the availability of jobs in the national economy, but this error was harmless. *See* AR at 21–37. At the hearing, the VE testified that no job exists that would allow the ALJ's hypothetical person to be absent more than one day a month or off-task for more than 10% of the time. *Id.* at 66. The only medical professional who opined on Collado's potential absence from work was Dr. Grullon-Figueroa. As discussed above, the ALJ did not err in finding Dr. Grullon-Figueroa's opinion to be unpersuasive.

Collado supports her argument that the ALJ erred by ignoring potential absences by citing to *Iglesias-Serrano v. Colvin*, No. 16-CV-418 (RWS), 2016 WL 7441697, at *8 (S.D.N.Y. Dec. 23, 2016). However, *Iglesias-Serrano* is distinguishable because there, the ALJ disregarded a medical opinion regarding absences that was echoed by other medical opinions and substantiated by multiple MRIs. Here, Dr. Grullon-Figueroa's assessment is unsupported by the medical facts in the record or by the other doctors. In contrast, in *Barry v. Colvin*, the Second Circuit found there was substantial evidence to support the ALJ's assessment regarding the claimant's ability to maintain regular attendance, including the

claimant's own statements, treatment notes, and the opinion of the state agency psychologist.  606 F. App'x 621, 624 (2d Cir. 2015).  Here, as in *Barry*, there is substantial evidence in the record to support the conclusion that Collado can maintain regular attendance.  *See e.g.,* AR at 79–80 (Dr. Bhutwala opined that Collado was "not significantly limited" in her ability to "complete a normal workday and workweek without interruptions" and further, that Collado "retains the ability to perform the four basic demands of unskilled work on a sustained basis").

### 3. The ALJ's RFC Determination is Supported by Substantial Evidence

The ALJ's RFC determination is supported by substantial evidence in the record.  In making this determination, the ALJ relied on and cited to the opinions of multiple medical experts, the clinical notes provided in the record, and Collado's own testimony.  *See* AR at 27–35.  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a certain conclusion."  *Selian*, 708 F.3d at 417.  An ALJ need not "mention[] every item of testimony presented to him."  *Mongeur,* 722 F.2d at 1040.  Even if the ALJ does not explicitly discuss every piece of evidence, a court may affirm the ALJ's decision if "the evidence of record permits [the court] to glean the rationale of [the] ALJ's decision."  *Id.*; *see also, e.g.*, *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013).  A review of the ALJ's decision demonstrates that he carefully considered each piece of the medical record and determined what he found to be persuasive and what he did not.  *See* AR at 27–35.  A reasonable mind can read the ALJ's decision and understand how he arrived at his conclusions.  As discussed further below, in

arguing that the ALJ did not base the RFC determination on substantial evidence, Collado relies on medical opinions that the ALJ found to be unpersuasive.  Pl. Mem. at 14–20.  Additionally, as discussed above, the ALJ adequately explained why he found those medical opinions to be unpersuasive, thus requiring deference from the Court.  *See, e.g., Smith*, 740 F. App'x at 725 ("The ALJ could have reached a different conclusion on the disputed medical record, but we defer to the ALJ's disability determination when it is supported by substantial evidence.").

### a. The ALJ's Assessment of Collado's Mental Impairments Was Supported by Substantial Evidence

In determining Collado's RFC with regard to her mental illness, the ALJ correctly relied upon three sources of information: (1) Collado's own testimony regarding her lifestyle and daily activities; (2) the years of clinical notes regarding her mental health; and (3) the medical opinion of Dr. Bhutwala.  *See* AR at 21–37. First, Collado's records reveal that she is capable of carrying out a variety of daily activities such as: watching television, preparing simple meals, and going to the grocery store.  *Id.* at 268–69, 349, 891.  While Collado might not do each of these activities all the time, and her mental state at any given moment may affect whether she is capable of carrying out any one of them, the ALJ examined the record as a whole, through the years, to come to the conclusion that Collado is capable of performing them.  The ALJ's reliance on reports of the claimant's daily activities is appropriately considered.  *Cichocki,* 729 F.3d at 178.

Second, the clinical notes in the administrative record, from medical appointments over the course of several years, include the following diagnoses:

general anxiety disorder, post-traumatic stress disorder, and major depressive disorder.  *See* AR at 412, 414, 503, 862–67.  However, as the ALJ  explained, the clinical notes also demonstrate that, overall, Collado has responded well to psychiatric medication and treatments, and is generally in control of her mental well-being.  *Id.* at 411, 417–18, 471–72, 475.  While she might have bouts of depression and anxiety every so often, the clinical notes demonstrate that a combination of medicine and therapy is effective in stabilizing her mood.  *Id.*

Finally, the ALJ relied upon the opinion and findings of Dr. Bhutwala, who provided a psychological review in September 2018.  *Id.* at 33, *referring to id.* at 76–80.  Dr. Bhutwala examined Collado's medical records and determined the following:  Collado does have the impairments of depressive, bipolar and related disorders, as well as anxiety and obsessive-compulsive disorders; although she does have these impairments, they do not precisely satisfy the Listings 12.04 and 12.06; Collado has "moderate" limitations in her ability to understand, remember, and apply information; "moderate" limitations in her ability to concentrate, persist, or maintain pace; "moderate" limitations in her ability to adapt or manage herself; and "mild" limitations in her ability to interact with others.  *Id.* at 76-80.  In sum, Dr. Bhutwala determined that Collado "retains the ability to perform the four basic demands of unskilled work on a sustained basis."  *Id.* at 80.

The totality of this information constitutes substantial evidence to support the ALJ's RFC finding, limiting Collado to "unskilled work with limited interaction, limited changes in the work setting, and limited to communicating with [no] more

than simple information in English." *Id.* at 33.  A "reasonable mind" could find these three sources of evidence adequate to support the ALJ's conclusion.  *Selian*, 708 F.3d at 417.

### b. The ALJ Properly Evaluated the Paragraph "B" Criteria Listing 12.03, 12.04, 12.06, and 12.15

Based on the evidence detailed above, the ALJ determined that Collado has "moderate" limitations in the following areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) the ability to concentrate, persist, or maintain pace; and (4) adapting or managing oneself.  AR at 25–27. Collado does not appear to take issue with the ALJ's finding of a moderate limitation in each of the four categories.  Pl. Mem. at 21.  However, Collado argues that the RFC does not appropriately factor in the moderate limitation in two of the categories: ability to concentrate, persist, or maintain pace, and adapting or managing oneself.  *Id.*

First, as the Commissioner points out, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 49 n.3 (2d Cir. 2021).  However, "the ALJ's RFC findings 'must include a narrative discussion' that describes 'how the evidence supports each conclusion, citing specific medical facts . . .  and nonmedical evidence,' and addresses 'the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis.'"  *Brown v. Comm'r for Soc. Sec.*, No. 15-CV-4913 (RJS), 2016 WL 7637285, at *9 (S.D.N.Y. June 29, 2016) (quoting SSR 96-8p, 1996 WL 374184, at *7), *adopted by* 2016 WL

7646997 (Dec. 30, 2016).  Here, the ALJ has met this burden.  He both detailed how he arrived at his findings of a "moderate" limitation in those categories and explained why he believed the RFC was adequate.

Over the course of eight pages in his decision, the ALJ analyzed Collado's alleged symptoms against the medical facts in the record.  AR at 25–33.  When considering "the ability to concentrate, persist, or maintain pace," the ALJ noted that Collado alleges "that she is unable to cook or take medication independently because she is forgetful."  *Id.* at 26.  However, the ALJ pointed out in the same paragraph in his decision, "the longitudinal exams show limited memory deficit, if any, intact [thought] process, intact insight, and judgment, and no gross deficits in her attention and calculation."  *Id.*  Collado also visited a neurologist who found she had no defects with regard to her memory.  *Id.* at 960.  Accordingly, this lack of a medical finding meets the substantial evidence standard.  *See, e.g., Diaz* 59 F.3d at 315 (lack of evidence showing functional limitation constitutes substantial evidence that limitation does not exist).

Similarly, as to the category of "adapting or managing oneself," the ALJ observed that Collado alleged both that "she has difficulty remembering information such as taking medication," and also "that public places exacerbate her symptoms of panic and anxiety."  *Id.* at 27.  Here again, the ALJ reviewed the medical record and found these allegations were not supported by the clinical notes or the neurology report.  *Id.*

The ALJ considered all this information together to determine Collado was moderately limited in these capacities.  Accordingly, in the RFC finding, the ALJ limited Collado to "unskilled work with limited interaction, limited changes in the work setting, and limited to communicating no[] more than simple information in English."  *Id.* at 33.  This conclusion was also informed and supported by the findings of Dr. Bhutwala, who concluded that Collado can perform basic demands of unskilled work.  *Id.* at 80.  In sum, the ALJ properly considered the Paragraph "B" criteria and properly explained his reasoning.  *See Brown*, 2016 WL 7637285, at *9.

### 4. The ALJ Properly Evaluated Collado's Subjective Allegations

The ALJ found that Collado's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," but that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  AR at 28.  The ALJ went on to explain that Collado's allegations are not supported "by the longitudinal medical evidence of record."  *Id.* at 29.  The record supports this assessment.

The ALJ was required to consider Collado's complaints and allegations, but he did not have to accept them as fact.  *See, e.g., Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (The ALJ is "not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." (quotation

omitted)).  Collado's subjective allegations, when considered in light of the other evidence, are inconsistent with the record.

The Commissioner points out a clear example of this inconsistency.  In her motion papers, Collado argues that her statements regarding her memory issues are consistent with the evidence.  Pl. Mem. at 24.  However, as the Commissioner observes, the evidence in the record to which Collado cites are merely instances of Collado's own allegations of memory loss.  Def. Mem. at 17–18, *referring to* AR at 365, 501–04, 857–60, 882–84, 886–88, 894–96, 908–13.  The clinical records suggest otherwise.  Notably, Collado visited a neurologist in 2018 who determined that Collado did not have any cognitive defects.  AR at 960.  In many instances in Collado's longitudinal medical records, when she complained of issues with her memory, she was given practical, non-medicinal advice as a solution, such as setting an alarm on her phone.  *See, e.g., id.* at 882–83, 886–87.  Further, as the ALJ explained, although Collado's sister also testified to Collado's memory issues, her sister does not have medical training.  *Id.* at 35.  As such, the ALJ gave appropriate weight to Collado's subjective allegations.  Finally, the ALJ did not ignore Collado's subjective allegations—they were factored into the RFC finding, which limited Collado to "unskilled work with limited interaction, limited changes in work setting, and limited to communicating [in] no more than simple information in English."  *Id.* at 33.  This was firmly within the ALJ's discretion.  *See Matos v. Comm'r of Soc. Sec.*, No. 18-CV-4701 (BMC), 2019 WL 4261767, at *4 (E.D.N.Y. Sept. 9, 2019)

33

(ALJ's decision adequate where it contained "several references" to claimant's testimony "both the parts [the ALJ] credited and the parts [the ALJ] didn't").

### III. CONCLUSION

For the foregoing reasons, Collado's motion for judgment on the pleadings is denied and the Commissioner's cross-motion is granted.

The Clerk is directed to mark the motion at Docket Number 18 as "denied," and the motion at Docket Number 21 as "granted," and enter judgment for the Commissioner.

**SO ORDERED.**

Dated: June 6, 2022
       New York, New York

_____
JAMES L. COTT
United States Magistrate Judge